**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OMEGA PROTEIN CORPORATION, GARY R. GOODWIN, BRET D. SCHOLTES, STEPHEN C. BRYAN, MICHAEL N. CHRISTODOLOU, CELESTE A. CLARK, DAVID H. CLARKE, DAVID A. OWEN, DAVID W. WEHLMANN, COOKE INC., and ALPHA MERGERSUB, INC.,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 6, 2017 (the "Proposed Transaction"), pursuant to which Omega Protein Corporation ("Omega" or the "Company") will be acquired by Cooke Inc. ("Parent") and its wholly-owned subsidiary, Alpha MergerSub, Inc. ("Merger Sub," and together with Parent, "Cooke").

2. On October 5, 2017, Omega's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Cooke. Pursuant to the terms of the Merger Agreement, if Omega's

shareholders approve the Proposed Transaction, they will receive $22.00 in cash for each share of Omega common stock that they own.

3. On October 30, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Omega common stock.

9. Defendant Omega is a Nevada corporation and maintains its principal executive

offices at 2105 City West Boulevard, Suite 500, Houston, Texas 77042. Omega's common stock is traded on the NYSE under the ticker symbol "OME."

10. Defendant Gary R. Goodwin ("Goodwin") has served as a director of Omega since November 2006 and as Chairman of the Board of Omega since February 2013.

11. Defendant Bret D. Scholtes ("Scholtes") has served as President and Chief Executive Officer ("CEO") of Omega since January 2012 and as a director of Omega since February 2013.

12. Defendant Stephen C. Bryan ("Bryan") has served as a director of Omega since June 2014.

13. Defendant Michael N. Christodolou ("Christodolou") has served as a director of Omega since June 2016.

14. Defendant Dr. Celeste A. Clark ("Clark") is a director of Omega.

15. Defendant David H. Clarke ("Clarke") is a director of Omega.

16. Defendant David A. Owen ("Owen") has served as a director of Omega since February 2010.

17. Defendant David W. Wehlmann ("Wehlmann") has served as a director of Omega since April 2012.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a corporation incorporated under the laws of the Province of New Brunswick, Canada, and is a party to the Merger Agreement.

20. Defendant Merger Sub is a Nevada corporation, an indirect, wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Omega (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of October 26, 2017, there were approximately 22,478,928 shares of Omega common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

28. Omega is a nutritional products company that develops, produces, and delivers nutrition products throughout the world to improve the nutritional integrity of foods, dietary supplements, and animal feeds. The Company operates in two primary industry segments: animal nutrition and human nutrition.

29. Omega's animal nutrition segment is comprised primarily of two subsidiaries: Omega Protein, Inc. ("OPI") and Omega Shipyard, Inc. ("Omega Shipyard"). OPI, the Company's principal operating subsidiary, is predominantly dedicated to the production of animal nutrition products and operates in the menhaden harvesting and processing business. A portion of OPI's production is transferred to Omega's human nutrition business. Omega Shipyard owns and operates a dry-dock facility in Moss Point, Mississippi that is used to provide shore side maintenance for OPI's fishing fleet.

30. The Company's human nutrition business operates under the "tera's" branded product and "Bioriginal" names. Bioriginal has three primary product lines: specialty oils, protein products, and other nutraceutical ingredients. Bioriginal is comprised primarily of three subsidiaries: Bioriginal Food & Science Corp. ("Bioriginal Food & Science"), Wisconsin Specialty Protein, L.L.C. ("WSP"), and Cyvex Nutrition, Inc. ("Cyvex"). Bioriginal Food &

Science is a supplier of plant and marine based specialty oils to the food and nutraceutical industries. WSP is a manufacturer and marketer of specialty dairy proteins and other related. Cyvex is an ingredient supplier for the food and nutraceutical industries.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

31.  Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33.  The Proxy Statement omits material information regarding Omega's financial projections, as well as the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

34.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35.  Although the Proxy Statement discloses certain of the Company's financial projections, it fails to disclose certain of the projections that J.P. Morgan actually used and relied upon in its valuation analyses to support its opinion that the merger consideration is fair to the Company's stockholders. For example, in performing its Discounted Cash Flow Analysis, J.P. Morgan used the Company's projected unlevered free cash flows for years 2017 through 2026.

The Proxy Statement, however, fails to (but must) disclose the Company's unlevered free cash flows for years 2017 through 2026 that were used by J.P. Morgan in its analysis, as well as the line item projections used to calculate those unlevered free cash flows. The disclosure of these projections is necessary so that stockholders can understand the Company's long-term standalone prospects, and test the various assumptions that were selected by J.P. Morgan in its analysis.

36. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's projected unlevered free cash flows for years 2017 through 2026, and their respective line items, as used by J.P. Morgan in its analysis; (ii) the inputs and assumptions underlying the discount rate range of 7.5% to 8.5% used by J.P. Morgan in its analysis; and (iii) the terminal exit multiples implied by J.P. Morgan's analysis.

37. With respect to J.P. Morgan's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by J.P. Morgan in the analysis. Notably, the defendants failed to disclose *any* of the multiples of the selected companies. Without this information, stockholders cannot assess the reliability of J.P. Morgan's analysis and determine the comparability or appropriateness of using each of the selected companies in the analysis. Indeed, the Proxy Statement itself indicates that "certain of these companies may have characteristics that are materially different from those of Omega."

38. Similarly, with respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by J.P. Morgan in the analysis. Like the Public Trading Multiples analysis, the defendants failed to disclose *any* of the multiples of the selected transactions.

Without this information, stockholders cannot assess the reliability of J.P. Morgan's analysis and determine the comparability or appropriateness of using each of the selected transactions in the analysis.

39. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Unaudited Financial Projections of Omega;" and (ii) "Opinion of Omega's Financial Advisor Regarding the Merger Consideration."

40. The Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

41. The Proxy Statement indicates that Omega engaged in a strategic review process in 2017 and pursued three different alternatives: a sale of the entire Company; a sale of the Company's Bioriginal Food & Science and Cyvex subsidiaries; and a sale of the Company's WSP subsidiary. According to the Proxy Statement, Omega received numerous acquisition offers for each alternative and, by September 24, 2017, "one bidder remained under consideration in each sales process," but the Board determined "that the human nutrition sales process should not delay a potential transaction with Cooke." The Proxy Statement fails to disclose the final proposed terms of the offers to acquire the Company's subsidiaries. Without this information, stockholders cannot determine for themselves whether it is in their best interest for the Company to remain a standalone business and potentially sell the Company's subsidiaries, rather than sell the entire Company.

42. Further, the Proxy Statement indicates that, throughout the sales process in years 2015 through 2017, the Company entered into confidentiality agreements with numerous parties

that expressed an interest in acquiring the Company or certain of its subsidiaries. The Proxy Statement, however, fails to disclose the terms of those confidentiality agreements, including whether they contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company.

43. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

44. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's executive officers.

45. The Proxy Statement states that "Omega has amended the employment agreement with each executive officer other than Messrs. Held and Vidal in connection with the merger to add constructive termination as a termination event triggering severance benefits." With respect to these amendments, the Proxy Statement indicates that:

> The compensation committee of the Omega Board reported that they had discussed various compensation and employee-related issues that might arise in connection with potential transaction, as well as employee matters that were subject to negotiation in the draft merger agreement and had determined that it was in Omega's interest that the executive employment agreements that did not include a constructive termination provision should be amended to include a customary constructive termination provision as a trigger for receipt of severance under the agreements after a change in control because Omega would need a mechanism to retain these key executives during the time between announcement of a transaction and closing.

46. The Proxy Statement, however, fails to disclose all relevant information relating to the timing and nature of discussions regarding the amendments to the employment agreements, including who proposed the amendments and who negotiated and participated in such conversations.

47. Communications regarding amended employment agreements that provide for lucrative payments during the negotiation of the underlying transaction must be disclosed to

9

stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Omega's Executive Officers and Directors in the Merger."

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Omega's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Omega

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Omega is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Cooke

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and Cooke acted as controlling persons of Omega within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Omega and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and Cooke was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or

11

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

62.     Cooke also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

63.     By virtue of the foregoing, the Individual Defendants and Cooke violated Section 20(a) of the 1934 Act.

64.     As set forth above, the Individual Defendants and Cooke had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 6, 2017       **KEMP, JONES & COULTHARD LLP**

                 By: */s/ Michael Gayan*
                     Michael J. Gayan (Nev. Bar No. 11135)
                     Wells Fargo Tower, 17th Floor
                     3800 Howard Hughes Parkway
                     Las Vegas, NV 89169
                     (702) 385-6000

                     *Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Adam Franchi ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Omega Protein Corporation (NYSE: OME) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 12/1/16 | 45 | $23.45 |
|  |  |  |
|  |  |  |
|  |  |  |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6 day of November, 2017.

Adam Franchi